## Cubbage *v.* Pittsburg Coal Company, Appellant.

*Mines and mining—Deed—Covenants—Mining privileges—Ventilation shaft.*

Where a deed for thirty-one acres of coal gives the right "to transport other coal" through the entries in the thirty-one acre tract, and gives the further right "to exercise the usual and ordinary privileges of ventilation and drainage upon the thirty-one acre tract, and to transport other coal through underground entries made or to be made in the coal so granted," the grantee has a right to sink a ventilation shaft through the surface of the thirty-one acre tract so as to ventilate not only the entries in the thirty-one acre tract, but also entries from other tracts opening into it.

Argued · April 27, 1905.  Appeal, No. 171, April T., 1905, by defendant, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1903, No. 215, on bill in equity in case of Boyd G. Cubbage v. Pittsburg Coal Company.  Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.  Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Superior Court.

Defendant's request for findings of fact were, among others, as follows:

6. That there is not upon the thirty-one acre tract any means of ventilating the mines and entries and coal immediately underneath the same, and the said entries being old are generating black-damp, thus rendering the workings thereunder unsafe and unfit for defendant company's employees to work, not only in the workings mentioned, but also in the remainder of said "Grant Mine," adjoining and adjacent thereto, and connected therewith, and that it is absolutely necessary for the safety of the operations of the workings in and under the said thirty-one acre tract, that some means of ventilating the same be immediately installed, maintained and operated.. *Answer:* Refused.

7. That the ventilating plant proposed to be installed by said defendant company is necessary for the ventilation of the workings under said tract and the premises of the plaintiff as described in his bill, as well as that portion of the "Grant

Mine " connected therewith ; and that the site selected for the defendant company for the installation, construction and operation of said ventilating plant is the best site to insure the proper and necessary ventilation of the thirty-one acre tract and the " Grant Mine," as well as the safety of the miners operating same. *Answer :* Refused as a whole.

9. That it is necessary to ventilate ·the entries and passages in and under said entire tract to enable defendant company to transport its coal through the same, and over said tipple and inclined plane to said railway, and that the ventilating plant which said defendant company is attempting to install on plaintiff's land is necessary to ventilate said entries ; and further that the location of the same upon plaintiff's land, chosen for said ventilating plant is the best location therefor in order to ventilate said entries most effectually and with the least damage to plaintiff's property. *Answer :* Refused.

Defendant's requests for conclusions of law were as follows :

1. That the grant of all the coal under said cubbage land, and the mining rights and privileges and easements appurtenant thereto, under which defendant company is operating its " Grant Mine," was made at the time of severing the title to the coal and the land overlying the same, for the express purpose of operating a larger body of which said cubbage tract was a part; and the mining rights, easements and privileges granted were intended for the benefit of said larger body of coal as a whole, and not exclusively as appurtenant to said cubbage coal. *Answer :* Refused.

[2. That under all the facts and testimony in this case so long as there remains unmined and mineable any coal underlying said cubbage land], and so long as the defendant company owns any coal mineable which can be transported to the Pittsburg & Steubenville (now the P. C. C. & St. L.) Railroad, through the entries and passages within said land, and over the tipple and inclined plane, now and heretofore used in connection with said " Grant Mine," the said defendant company has a right to erect, construct and maintain the ventilating plant complained of, as proposed by it. *Answer :* Refused, except as to part in brackets, which is affirmed.

3. That so long as defendant company may own any coal, either underlying the cubbage tract or lands adjoining said

tract, forming part of the " Grant Mine," which can be transported over the right of way, inclined plane and tipple to the Pittsburg & Steubenville (now the P. C. C. & St. L.) Railroad, defendant has the right under the grant of mining rights and privileges connected therewith, by deed of Joseph K. Cubbage, dated May 6, 1865, to transport such coal through underground entries now opened and being used in the land of the plaintiff, described in his bill of complaint, and to ventilate said entries in the manner proposed and by means of the ventilating plant whose location and construction are complained of by the plaintiff. *Answer :* Refused.

5. That the said defendant, having entered into open, notorious and peaceable possession of the land upon which it is proposed to install said ventilating plant, with the knowledge and consent of the plaintiff, under the title claimed by it under said grant of mining rights, privileges and easements, the plaintiff, if any right of action he has, has a complete remedy at law by action in ejectment. *Answer :* Refused.

6. That under all the evidence the plaintiff's bill in this case should be dismissed. *Answer :* Refused.

The court found, inter alia, as follows :

1. That the grant from Cubbage to Lyon, trustee, gave no ventilating privileges to the defendant, except for the coal under the thirty-one acre tract.

2. Inasmuch as practically all the coal under the thirty-one acre tract has long since been mined, excepting such coal as remains necessary to support the entries and the surface overlying the same ; and as the shaft for ventilation now complained of is for the purpose of ventilating the " Grant Mine," adjoining and beyond the Cubbage thirty-one acre tract, the plaintiff is entitled to equitable relief, and the defendant must be restrained from further proceeding to sink said ventilating shaft on plaintiff's land.

The court awarded an injunction.

*Errors assigned* among others were (3–12) rulings as above ; (14) in not dismissing the bill.

*A. M. Neeper*, with him *Elliott Rodgers* and *Charles M. Johnston*, for appellant, cited : King v. N. Y. & C. Gas Coal

344 CUBBAGE *v.* COAL CO., Appellant.

Co., 204 Pa. 628; Lillibridge v. Coal Co., 143 Pa. 293; Webber v. Vogel, 189 Pa. 156.

*A. G. Smith*, of *Smith & Kearns*, for appellee, cited: Potter v. Rend, 201 Pa. 318; Harris v. Ryding, 5 M. & W. 60; Allshouse's Est., 23 Pa. Superior Ct. 146.

OPINION BY ORLADY, J., November 20, 1905:

By deed dated May 6, 1865, Joseph K. Cubbage conveyed to one Lyon, trustee, all the coal in a tract of land containing thirty-one acres and forty-five perches situate partly in the borough of Carnegie and partly in the township of Collier, together with the right to mine and carry away said granted coal, and in so doing to exercise the usual and ordinary privileges of ventilation and drainage upon the land of the said Joseph K. Cubbage, but in such manner as to do no unnecessary injury thereto, with the right also to transport other coal through underground entries made or to be made in the hereinbefore granted coal and over the railway hereinafter mentioned; also, a right of way for an inclined railway with the necessary appurtenances across the land of the said Joseph K. Cubbage from said granted coal to the Pittsburg and Steubenville Railroad, with the free and uninterrupted right to construct, maintain, and operate the same; also, the use of one acre of land parallel to the tract aforesaid, at or about the pit mouth, for a check house and other necessary and convenient uses in connection with the mining operations, such as the deposit of timber, coal, ashes, slack, etc., but the same shall not be occupied by any dwelling house; also, the use of such ground, parcel of the tract aforesaid, along the line of the Pittsburg and Steubenville Railroad as may be necessary or convenient for sidings and switches for the proper transaction of business in the loading and transporting of coal. The habendum clause of the deed is as follows, namely: " To have and to hold the said right of way, uses, easements, and privileges unto the said party of the second part, his heirs and assigns, so long as he or the firm of Lyon, Shorb and Company, his or their heirs or assigns may have any coal, whether now owned or hereafter to be acquired which can be brought by said route to the Pittsburg and Steubenville Railroad, and the said described coal hereby granted

or mentioned and intended so to be with the appurtenances, unto the said party of the second part, his heirs and assigns, to and for the only proper use and behoof of the said party of the second part, his heirs and assigns forever, as the property of and in trust for the firm of Lyon, Shorb and Company, according to the provisions of a certain deed relating to the real estate of said firm." The title thus acquired by Lyon, trustee, became vested in the Pittsburg Coal Company, the defendant corporation, which at the time of filing this bill in equity was the owner of fourteen other adjacent tracts and parcels of land, aggregating 1,050 acres and comprising the territory operated under the name of the Grant mine. For the purposes of this case it is admitted by an agreement filed, that the defendant company is the owner of all the stratas, or veins of coal, and the entries underlying and within the said tract of land containing thirty-one acres and forty-five perches. By the same agreement it is admitted that the title is in the plaintiff to fourteen acres, 128 perches, suject to the prior conveyance above mentioned of all the coal in and under the larger tract of land containing thirty-one acres and forty-five perches of which the plaintiff's land is a part. It is conceded, and is found as a fact by the court below that " the pit mouth or tipple of the Grant mine is located upon an acre of land in the Joseph K. Cubbage tract immediately adjoining the thirty-one acre tract which lies between the pit mouth and the balance of the 1,000 acre tract.

In September, 1903, the defendant began to sink a shaft on the plaintiff's land for the purpose of ventilating the Grant mine generally and in its entirety. This proposed construction was intended to include when completed an excavation of eight by ten feet in the coal of the mine, with the earth and debris taken therefrom and deposited about the mouth of the shaft; also a suitable building to maintain a ventilating fan and other ventilating contrivances, including an engine. The plaintiff filed a bill in equity praying for an injunction to restrain the defendant from sinking the ventilating shaft, and denied its right to construct and maintain such a shaft on his land under the terms of the grant above recited. After an answer and replication were filed the case was set down for trial, when testimony was taken and a decree entered perpetually enjoin-

ing the defendant company from sinking and maintaining the shaft on the plaintiff's land, from which decree the defendant took this appeal.

The conclusions of law upon which the decree is founded are as follows : 1. That the grant from Cubbage to Lyon, trustee, gave no ventilating privileges to the defendant except for the coal in the thirty-one acre tract. 2. Inasmuch as practically all the coal under the thirty-one acre tract has long since been mined, except such coal as remains necessary to support the entries and the surface covering the same, and as the shaft for ventilating now complained of is for the purpose of ventilating the Grant mine adjoining and beyond the Cubbage (thirty-one acre) tract, the plaintiff is entitled to equitable relief, and defendant must be restrained from further proceedings in sinking the ventilating shaft on the plaintiff's land.

In arriving at the conclusions of law the court below found that : 1. The operations of the Grant mine are and have been exclusively confined to the vein of coal known as the Pittsburg vein, and of this more than one-half of the 1,000 acres has been exhausted. 2. That there is no sufficient evidence of other coal strata below the Grant mine. 3. That the coal under the thirty-one acre tract has been mined and practically exhausted for more than twenty years, except so much as is necessary to support the entries and surface over them. 4. The 400 or 500 acres of coal unmined in the 1,000 acre territory of the Grant mine must of necessity be hauled through the accessible entries under the thirty-one acres and the coal supporting the same must therefor remain substantially in its present condition until the entire Grant mine and the thirty-one acres are completely exhausted.

The proof adduced by the defendant at the trial was positive and uncontradicted that there was considerable unmined coal of the Pittsburg vein in the thirty-one acre tract. The chief mining engineer of the defendant stated that he had no doubt that there were large areas in the tract in which no portion of the coal was removed ; that there was at least six to eight acres, and the probabilities were that there was a great deal more than that. An engineer called for the plaintiff fixed the area of unmined coal at three acres, and all agreed that the pillars

and supports left in the mine, while it was being actively operated, would furnish considerable coal when the workings were finally abandoned. It was also testified by witnesses for the defendant that veins of other merchantable coal were located under the Pittsburg vein within the thirty-one acre tract. This evidence was not by actual demonstration by drill holes in the property, but was based upon the geological strata as found in the region, which were uniform and undisturbed, as well as upon the experience of the witnesses in other and near-by operations. The court did not directly find this fact one way or the other, only, that there was no sufficient evidence of other coal strata below the Grant mine of the Pittsburg seam. This phase of the case is not vitally important as it is now presented. The real question being the right of the defendant to install, operate, and maintain a ventilating shaft on the thirty-one acre tract so as to furnish sufficient air in the entries and workings in that tract and in the other operations of the Grant mine. The present necessity for ventilation of the Grant mine, to insure the health and safety of the miners working therein, is admitted by all witnesses who testified on that subject. It was undisputed that the old workings generated black-damp, a gas dangerous to life, and the mine inspector of the district gave notice to the defendant that the ventilating power must be increased. After an examination of the premises he fixed upon the location, which was adopted by the defendant, as the most desirable to secure the safe ventilation of the mine, with the least damage to the surface land. The defendant's title to all the coal in the thirty-one acre tract, including the seam now being worked and all lower strata, is not open to question, and in the deed which assures to it all this coal, is the grant of the right " to exercise the usual and ordinary privileges of ventilation and drainage upon the thirty-one acre tract, and to transport other coal through underground entries made or to be made in the coal so granted." In the development of the territory, to which the thirty-one acre tract was the key or outlet, it would follow that some provision would of necessity be required for the ventilation of the deeper or more remote workings, and the right to erect necessary appliances to furnish a constant and adequate supply of pure air to insure the health and safety of the miners was as direct a subject of the grant as

the right to construct and operate an inclined railroad; to deposit timber, coal, slack, etc., on the one acre of land adjacent to the pit mouth; or to erect and maintain necessary sidings, switches, etc.  The restriction on this right was limited by the words, " but in such manner as to do no unnecessary injury thereto."  It is not contended that the location selected by the defendant is an improper one, or that another site would do the plaintiff any less injury.  His contention being that the defendant has no right at all to erect a ventilating shaft on his fourteen-acre tract.  The deed does not limit the time within which the coal in the thirty-one acres is to be removed, nor that it is to be mined before the " other coal " mentioned should be mined.  It would be a physical impossibility to confine the gases generated in any one tract to that original territory, and the intention of grantor and grantee is apparent that the thirty-one acre tract was intended to be a part of a larger operation from which the coal was to be delivered to the railroad cars through this Cubbage tract.  " The usual and ordinary privileges of ventilation " mentioned could only refer to the character and extent of ventilation made necessary by the development and extension of the mine workings.  It would not be possible to mine and haul " the other coal " from distant workings without providing for safe ventilation in the entries and passages in the thirty-one acre tract.  The mine inspector testified that the place selected " was the only suitable location there."  This witness, whose duty it was to inspect the mine and require that the ventilation should be ample and adequate for the safety of the miners, explained fully the reasons which determined him in making this selection for the location of the ventilating plant, and he is not contradicted in any particular. It was a matter reasonably in contemplation of the grantor when he conveyed to Lyon, trustee, that the usual and ordinary ventilation of the mine would refer to the time when such ventilation became necessary.  Such ventilation is not confined by direct words to the thirty-one acre tract, and the words of the grant are to be taken most strongly against the grantor. The " said granted coal " was but a part of the grant, and the proper ventilation of the underground entries in the thirty-one acre tract was a necessary incident to the right " to transport other coal " through these entries.  Such right was directly

given in apt words, and this without reference to the source of the air in any part of the mine.

The courts have much more consideration for the substance than the form of deeds, and they look less at the form used to pass the estate, and the words used in expressing the intention of the parties, than they do to the estate itself, which the parties intend to pass by the deed. The habendum, the object of which is to define precisely the quantity of the estate to be granted, declares that the grantor, his heirs and assigns, are to have and to hold the said right of way, uses, easements, and privileges so long as they may have any coal, whether now owned or hereafter to be acquired, which can be brought by said route to the Pittsburg and Steubenville Railroad.

The right to surface support is not involved in the case as now presented, there being no allegation of danger of subsidence of any part of the surface by reason of the construction of a ventilating shaft. As was said in Pringle v. Vesta Coal Co., 172 Pa. 438, " If the owner of the coal undertakes to mine and remove the coal, as he has an undoubted right to do, and damage results to the surface, either (*a*) from negligence in conducting his mining operations, or (*b*) from failure to properly and sufficiently support the surface, or (*c*) from both these causes combined, the surface owner is entitled to recover compensation for such injury as he may show he has sustained : " Youghiogheny River Coal Co. v. Allegheny Nat. Bank, 211 Pa. 319. That principle has no relation to the case in hand, which depends upon the construction of the grant " to exercise the usual and ordinary privileges of ventilation " by using a portion of the surface, eight feet by ten feet in size, within which to sink an air shaft through the surface and intermediate stratas, if the necessity for such ventilation is established and the method employed is the usual and ordinary one and in such manner as to do no unnecessary injury thereto. The necessity for ventilation of the Grant mine must be taken as clearly established by the testimony, and the character of the means adopted to secure a proper ventilation are not questioned, as being other than the usual and ordinary ones.

If our construction of the Cubbage-Lyon deed is the correct one it follows that the decree must be reversed. The appellant's request for finding of facts embraced in the third, fourth

and fifth assignments of error should have been affirmed, and its requests for findings as conclusions of law, embraced in the sixth, seventh, eighth and tenth assignments of error should have been affirmed.

The eleventh, twelfth and fourteenth assignments of error are sustained, the decree is reversed and the bill dismissed.

RICE, P. J., and HENDERSON, J., dissent.